IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TRI-CORNER INVESTMENTS, LLC, | : | |
| Plaintiff, | : | |
| | : | Case No. 3:07cv383 |
| vs. | : | |
| | | JUDGE WALTER HERBERT RICE |
| FIRST DEFENSE INTERNATIONAL | : | |
| GROUP, LLC, et al., | : | |
| Defendants. | : | |

DECISION AND ENTRY OVERRULING MOTION OF DEFENDANTS FIRST DEFENSE INTERNATIONAL GROUP, LLC, AND CHRIS BADSEY TO VACATE JUDGMENT (DOC. #14); DECISION AND ENTRY OVERRULING IN PART AND SUSTAINING IN PART MOTION OF DEFENDANTS FIRST DEFENSE INTERNATIONAL GROUP, LLC, AND CHRIS BADSEY TO STRIKE OR, IN THE ALTERNATIVE, TO GRANT THEM LEAVE TO RESPOND TO THE PLAINTIFF'S SUR-REPLY (DOC. #24)

In its Complaint (Doc. #1), Plaintiff alleges that it transferred nearly $500,000 to Defendants First Defense International Group, LLC ("FDIG"), and Chris Badsey ("Badsey"), in order to purchase nine vehicles on behalf of its customer, Paache Nigeria Limited.[1]  Plaintiff contends that the Defendants have

---

[1]Plaintiff also named Jack Mallory and Steve Hodges as Defendants in this litigation.  Neither of them has entered an appearance, nor is there an indication that either has been served.  Accordingly, the Court does not discuss Mallory or

neither delivered the vehicles nor refunded the sum that it had transferred. In its pleading, the Plaintiff set forth claims of breach of contract, unjust enrichment and fraud. See Doc. #1. When FDIG and Badsey failed to answer the Plaintiff's Complaint within the time provided by Rule 12(1)(a) of the Federal Rules of Civil Procedure,[2] Plaintiff moved for a default judgment. See Doc. #10. The Court granted that motion and subsequently entered judgment in favor of Plaintiff and against said Defendants in the sum of $952,647.44.[3] See Doc. #13.

This case is now before the Court on Defendants' Motion to Vacate Judgment (Doc. #14), wherein they argue that their failure to answer the Plaintiff's Complaint in timely fashion was the product of their excusable neglect. The Defendants have supported that motion with separately filed memorandum in support (Doc. #15) and Badsey's Declaration (Doc. #16). The Plaintiff has filed a memorandum opposing that motion (Doc. #18); the Defendants have filed a reply memorandum in support thereof (Doc. #20), and the Plaintiff a surreply. See Doc. #23.[4] On March 25, 2008, this Court conducted an oral and evidentiary

---

Hodges further, and, for sake of convenience, uses "Defendants" to refer to FDIG and Badsey, alone.

[2]FDIG and Badsey were both served on October 18, 2007. See Docs. ## 4 and 5. The Plaintiff requested that the Court enter default judgments against them on November 16, 2007. See Doc. #10 The Court granted that motion on February 4, 2008. See Doc. #13.

[3]That sum is comprised of equal awards of $476,323.72 each, for compensatory and punitive damages.

[4]FDIG and Badsey have filed a motion, requesting that the Court strike the Plaintiff's sur-reply memorandum, or, in the alternative, permit them leave to respond to the Plaintiff's sur-reply. See Doc. #24. They have attached their proposed response to their motion. Id. The Court will decline to strike the Plaintiff's sur-reply memorandum, although it will permit the Defendants to respond

hearing on the Defendants' motion. Subsequently thereto, the Defendants filed a supplemental memorandum in support of their motion. See Doc. #31. The Court now rules upon the Defendants' request that it vacate the default judgment entered herein, beginning its analysis by reviewing the legal standards it must apply.

In accordance with Rule 55(c) of the Federal Rules of Civil Procedure, a District Court is authorized to set aside a default judgment in accordance with Rule 60(b) of the Federal Rules of Civil Procedure, which provides:

> (b) <u>Grounds for Relief from a Final Judgment, Order, or Proceeding</u>. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

In <u>Weiss v. St. Paul Fire and Marine Ins. Co.</u>, 283 F.3d 790 (6th Cir. 2002), the Sixth Circuit reviewed standards that must be applied when a court rules on a request to vacate a default judgment under Rule 60(b):

---

to same, by considering their attached response when ruling on their request to vacate the judgment. Accordingly, the Court sustains in part and overrules in part Defendants' Motion to Strike or, in the alternative, to Grant Them Leave to Respond to the Plaintiff's Sur-reply (Doc. #24).

> We review for abuse of discretion the district court's granting of a motion to vacate a default judgment. Manufacturers' Indus. Relations Ass'n v. East Akron Casting Co., 58 F.3d 204, 207 (6th Cir. 1995). We review a motion to vacate a default judgment under the stricter standards of Rule 60(b) rather than under the more lax standards governing a motion to vacate the entry of default under Rule 55(c). Waifersong, Ltd. Inc. v. Classic Music Vending, 976 F.2d 290, 292 (6th Cir. 1992) ("But once the court has determined damages and a judgment has been entered, the district court's discretion to vacate the judgment is circumscribed by public policy favoring finality of judgments and termination of litigation. Rule 60(b) reflects this public policy by requiring greater specificity from a moving party before a court will set aside a default judgment.").
>
> \*     \*     \*
>
> The seminal case in this circuit on Rule 60(b) motions to vacate default judgments is United Coin Meter Co., Inc. v. Seaboard Coastline R.R., 705 F.2d 839 (6th Cir. 1983). In United Coin Meter[,] we noted that Rule 60(b) is to be applied "equitably and liberally" in considering motions to vacate defaults and default judgments, id. at 845, and that the same factors that control a motion to vacate an entry of default under Rule 55(c) are also applicable in determining whether to vacate a default judgment: (1) whether the opposing party would be prejudiced; (2) whether the proponent had a meritorious claim or defense; and (3) whether the proponent's culpable conduct led to the default. Id.
>
> In Waifersong, we made it clear that a party seeking to vacate a default judgment under Rule 60(b)(1) must demonstrate first and foremost that the default did not result from his culpable conduct. That burden may be carried, we said, only by meeting the requirements of Rule 60(b)(1), that is, by "demonstrat[ing] that his default was the product of mistake, inadvertence, surprise, or excusable neglect." Waifersong, 976 F.2d at 292. Only if the moving party makes this showing may the district court proceed to consider the other United Coin Meter factors. Id. Other cases have affirmed the more stringent inquiry courts must pursue when vacating a default judgment as opposed to an entry of default. See, e.g., Manufacturers' Indus. Relations Ass'n, 58 F.3d at 208.

Id. at 794. A motion seeking relief from judgment under Rule 60(b) is committed to the discretion of the District Court. See e.g., Info-Hold, Inc. v. Sound Merchandising, Inc., 538 F.3d 448 (6th Cir. 2008); In re Ferro Corp. Derivative Litigation, 511 F.3d 611 (6th Cir. 2008).

Herein, the Defendants base their request to vacate the default judgment entered against them solely upon Rule 60(b)(1), arguing that they have demonstrated excusable neglect for failing to respond to Plaintiff's Complaint in timely fashion.  The Defendants support this assertion on Badsey's Declaration. Therein, he states that FDIG manufactures a diversified range of bullet resistant products, including bullet proof vests, vehicle armoring, ballistic plates and shields. Doc. #16 at ¶ 3.  Badsey also indicates that, "following the events of 9/11," FDIG, as a federal contractor, he was instructed to obtain "a drop box for security purposes."[5]  Id.  According to Badsey, the drop box is a mailbox located on the premises of a commercial mailbox company named "Office Quick" and that an employee of that entity signed the certified mail receipts evidencing service in this litigation.[6]  Id. at ¶¶ 3-4.  Office Quick holds all mail addressed to FDIG, until someone from FDIG picks it up, which occurs once a week or once every two weeks.  Id. at ¶ 4.  After the mail has been picked up, it is sorted by an employee of FDIG.  Id.  Badsey also indicates that "[b]ecause of the various levels of federal security clearances, it is company policy that any mail addressed to the company or addressed to [him] is not opened by anyone except me."[7]  Id.  According to Badsey, since he had not physically been in the FDIG office since early October, 2007, he had not seen the Complaint and Summons that were mailed to FDIG and

---

[5]Badsey has not explained who instructed FDIG to obtain a drop box.

[6]The Defendants do not contend that service upon them at Office Quick's address was insufficient.

[7]Notably, Badsey does not state in his Declaration that he or anyone else employed by FDIG has a security clearance or that the federal government sends him or FDIG classified materials by mail or by any other means.

- 5 -

to himself.[8]  Id. at ¶ 5.  Although Badsey is out of the office for extended periods of time, he explained that he is able to conduct FDIG's day-to-day business through electronic mail and cellular telephone, through which that business is largely, if not exclusively, conducted.  Id. at ¶ 6.

In Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd. Partnership, 507 U.S. 380 (1993), the Supreme Court addressed the meaning of "excusable neglect" in Bankruptcy Rule 9006(b)(1).  The Court held that, "by empowering the courts to accept late filings where the failure to act was the result of excusable neglect, … Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."[9]  Id. at 388 (internal quotation marks and citation omitted).  The Court explained that the determination as to whether neglect of a deadline was excusable is an equitable one, "taking account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the

---

[8]Badsey executed his Declaration on February 16, 2008.  He states therein that, since January 5, 2008, he had been in Brazil and that he "was" expected back in the United States on February 16th.  Doc. #16 at ¶ 5.  He does not, however, indicate where he signed his Declaration.  During the period between early October, 2007, and February 16th, Badsey had initially been in South Africa, traveled to Mexico, returned to South Africa and, then, gone successively to New Jersey, Mexico, Iraq and Brazil.

[9]Although the Pioneer Inv. Services Court addressed the meaning of the phrase "excusable neglect" in Bankruptcy Rule 9006(b)(1), the Sixth Circuit has indicated that the Supreme Court's interpretation of the term is applicable to Rule 60(b)(1).  See Jinks v. AlliedSignal, Inc., 250 F.3d 381 (6th Cir. 2001).  Indeed, the Supreme Court noted therein that, "for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence."  507 U.S. at 394.

delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id. at 395. The defendant requesting that a court vacate the entry of a default judgment, on the basis of excusable neglect, has the burden of establishing same. Manufacturers' Indus. Relations Ass'n v. East Akron Casting Co., 58 F.3d 204, 209-10 (6th Cir. 1995).

Herein, this Court takes into account all pertinent facts and circumstances surrounding the Defendants' failure to answer Plaintiff's Complaint in timely fashion, including the four specific factors identified by the Supreme Court in Pioneer Inv. Services, and concludes that Badsey and FDIG have failed to demonstrate that their neglect was excusable. The most relevant circumstance is that the Defendants intentionally created an arrangement, under which for no demonstrated or apparent reason, no one read the Plaintiff's Complaint and other papers served on FDIG and Badsey, until after the entry of the default judgment against them had become known. Stated somewhat differently, the reason presented by FDIG and Badsey for their failure to respond to Plaintiff's Complaint in timely fashion was not a matter of inadvertence, mistake or carelessness, but, rather, was the result of a situation completely in their control and does not constitute a valid justification for the delay.

Badsey indicates in his Declaration that, after September 11, 2001, FDIG "was instructed" to obtain a drop box, "for security purposes." Notably missing from that document is any mention of the identity of the individual who had so instructed FDIG. Thus, the Court has been left to speculate about whether that individual was an employee of a federal agency for which FDIG was a contractor, a friend of Badsey's or FDIG's janitor. Therefore, this Court finds that Defendants have failed to provide a sensible reason for having Plaintiff's Complaint and

Summons delivered to Office Quick, where those documents remained for up to two weeks, before being picked up by an employee of FDIG and then remaining unread for almost four months, until an attorney at Badsey's direction opened and read same.  However, the initial delivery of the to Office Quick is not dispositive, since the cause of defaults entered against the Defendants was the company policy under which only Badsey would open the mail.  Badsey states in his Declaration that the policy was adopted because of various levels of security clearances, thus implying that classified materials were being mailed to FDIG, which could be opened only by Badsey, due to his security clearance.  Quite simply, the only reason Badsey has given for adopting the policy does not withstand close examination; therefore, the Court is compelled to conclude that the Defendants have failed to provide a believable reason for adopting the policy, under which the process served on them was left in FDIG's office without anyone reading it.  Badsey did not state in his Declaration that the federal government or anyone else has sent classified materials in the mail to him or FDIG, or even that he had a security clearance.  Moreover, Badsey also states in his Declaration that he is able to carry on his business away from the office, since it is conducted through cellular telephone and electronic mail.  Combining that with the absence of evidence that Badsey had no access to mail addressed to himself or to FDIG during his extended periods of absence from the office and of an explanation as to why the mail addressed to him and to FDIG could not have been sent to him at his location outside of FDIG's office (particularly during that period of time between early October, 2007, and February 16, 2008, when he was in New Jersey), this Court is compelled to conclude that mail was, at most, an afterthought for FDIG's business, providing additional support for the Court's conclusion that the Defendants have

not provided a believable reason for adopting the policy. Under the foregoing circumstances, this Court is unable to find that Badsey and FDIG have presented a believable reason for leaving the process sent to them in FDIG's office, unread for almost four months. Simply stated, one cannot insulate himself from legal process or a judgment entered against him by opening a drop box, for no objectively verifiable or valid reason, instructing those in his employ not to open the mail, and remaining away from the office for a matter of weeks or months before he or anyone else can review the contents of same.

Considering the other factors mentioned by the Supreme Court in <u>Pioneer Inv. Services</u>, the danger of prejudice to the non-moving party, the length of the delay and its potential impact on judicial proceedings and whether the movant acted in good faith (507 U.S. at 395), this Court is unable to conclude that the Defendants have met their burden of establishing excusable neglect for failing to respond to Plaintiff's Complaint in timely fashion. Although Plaintiff does not face the prospect of witnesses becoming unavailable due to its opponents' default and the concomitant delay, the Plaintiff faces the prospect of prejudice as a result of Defendants' failure to respond to the Complaint in timely fashion. In particular, Plaintiff faces the danger of prejudice, given its allegation, confirmed by the default judgment, that it has wire-transferred nearly $500,000 to FDIG in order to purchase a number of vehicles. Notwithstanding the wire transfers to FDIG, Plaintiff has not received any vehicles or been offered any type of refund. Moreover, given that Defendants' counsel indicated that Badsey was unable to travel to Dayton for the hearing on Defendants' request to vacate the judgment, it is apparent that Defendants' delay in answering could exacerbate the real possibility that Plaintiff will, if the judgment is vacated, receive neither the vehicles

nor the sum of money it transferred to FDIG, even if Plaintiff is ultimately successful on the merits.  Thus, the first Pioneer Inv. Services factor does not favor vacating the judgment entered against FDIG and Badsey.  In addition, the second factor identified by the Supreme Court therein, the length of the delay and its potential impact on judicial proceedings, does not cause the Court to conclude that it should find that Defendants' failure to respond in timely fashion was due to excusable neglect.  The Defendants delayed this litigation.  They moved for relief from judgment slightly more than three months after their response to Plaintiff's Complaint had become due.  Thus, the Court assumes for present purposes that the Defendants' default delayed the ultimate resolution of this litigation by that period of time.  Although three months is not an inordinately large amount of time to delay the resolution of a lawsuit, it bears emphasis that this is not an instance where a party discovers his failure to act in timely fashion on his own and then seeks leave of court to correct that default.  Rather, in the absence of any evidence explaining why, after nearly four months, the process was opened by an attorney representing FDIG and Badsey, this Court concludes that the Defendants did not act until the entry of the default judgment had an adverse impact on FDIG, such as freezing its bank account.  Lastly, this Court finds that the final factor mentioned by the Court in Pioneer Inv. Services, whether the Defendants acted in good faith, favors vacating the default entered against them, since there is no evidence that they acted in other than good faith, with respect to their failure to respond to the Plaintiff's Complaint in timely fashion.[10]

---

[10] Although Plaintiff contends that the Defendants acted in bad faith with respect to the contractual relationship between the parties, the Supreme Court did not indicate in Pioneer Inv. Services that a court should consider an alleged lack of good faith in the actions that give rise to the lawsuit in the first instance.

Balancing all three factors, this Court focuses on the last two such, finding that the Defendants' acting in good faith does not outweigh their failure to present a reasonable justification for failing to open the mail containing Plaintiff's Complaint and other process that was served upon them and, thus, to respond to that pleading in timely fashion.[11]  Therefore, the Court finds that FDIG and Badsey have failed to meet their burden of demonstrating that their failure to answer the Plaintiff's Complaint in timely fashion resulted from excusable neglect.

As is indicated above, the Sixth Circuit employs a three-part test to determine whether to vacate a default judgment under Rule 60(b)(1).  Weiss, 283 F.3d at 794.  One part of that test is whether the party seeking vacation has demonstrated the existence of one of the grounds set forth in Rule 60(b)(1), such as excusable neglect.  Id.  The Sixth Circuit has stressed that the other two parts of the test are not to be considered, when the party seeking vacation fails to establish one of the grounds set forth in Rule 60(b)(1).  Id.  Therefore, given that the Court has found that the Defendants have failed to establish excusable neglect, it would be improper for this Court to consider the other two parts of the Sixth Circuit's three-part test, i.e., whether the party opposing vacating the judgment would be prejudiced and whether the proponent of vacating the judgment has a meritorious claim or defense.[12]

---

[11]As is indicated above, neither of the first two factors favors vacating the default judgment entered herein.

[12]Above, the Court has considered the prejudice Plaintiff would suffer, if the default judgment were to be vacated, as part of the excusable neglect calculus mandated by Pioneer Inv. Services.

- 12 -

Accordingly, the Court overrules Defendants' Motion to Vacate Judgment (Doc. #14).

September 22, 2008

                                                    /s/ Walter Herbert Rice
                                            WALTER HERBERT RICE, JUDGE
                                            UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.